IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BELL HELICOPTER TEXTRON, INC., | § | |
| | § | No. 333, 2014 |
| Defendant-Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | |
| | § | Court Below: Superior Court |
| ANDRES ARTEAGA, individually, and as | § | of the State of Delaware |
| Co-Representative of the Estate of Leonardo | § | in and for New Castle County |
| Andres Arteaga (deceased); and | § | |
| SOCORRO ARTEAGA, individually, and | § | C.A. No. N12C-05-008 JRJ |
| as Co-Representative of the Estate of | § | |
| Leonardo Andres Arteaga (deceased), *et al.*, | § | |
| | § | |
| Plaintiffs-Below, | § | |
| Appellees. | § | |

Submitted: February 18, 2015
Decided: April 6, 2015


Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices; and **GLASSCOCK**,[*] Vice Chancellor; constituting the Court *en Banc*.

Upon appeal from the Superior Court. **REVERSED**.

Joseph J. Bellew, Esquire, Damien Nicholas Tancredi, Esquire, Cozen O'Connor, Wilmington, Delaware; Catherine Slavin, Esquire (*argued*), Gordon & Rees LLP, Philadelphia, Pennsylvania, for Appellant.

Richard A. Zappa, Esquire, Timothy E. Lengkeek, Esquire, Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware; Garvan F. McDaniel, Esquire, The Hogan Firm, Wilmington, Delaware; John C. Schwambach, Jr., Esquire (*argued*), Stevenson & Murray, Houston, Texas, for Appellees.


**STRINE**, Chief Justice, for the Majority:

---

[*] Sitting by designation under Del. Const. art. IV, § 12.

# I.    INTRODUCTION

Bell Helicopter Textron Inc. ("Bell"), a Delaware corporation, appeals from a Superior Court order determining that Texas law should govern litigation involving a helicopter that crashed in Mexico on October 15, 2010. Despite the presumption in the Restatement (Second) of Conflicts that the law of the place where the injury occurred should govern the dispute,[1] the Superior Court found that Texas law has the "most significant relationship" to the liability, damages, and remedies at issue. The court also opined that Texas law would be easier to apply than Mexican law because there would be no need to hire interpreters. In this interlocutory appeal, Bell argues that Mexican law is more appropriate because the decedents were all Mexican citizens, their relatives bringing this suit are all Mexican citizens, the helicopter was owned by a Mexican company, and it had been operated solely within Mexico for over thirty years when it crashed. Because the governing Restatement test to determine which sovereign's law to apply strongly favors Mexico, we reverse. The decision of which law to apply to tort claims must be made on neutral principles that apply in all cases. In this case, those principles unambiguously favor applying Mexican law to the liability, damages, and remedies at issue.

# II.    BACKGROUND

On October 15, 2010, a helicopter transporting mechanics and technicians from the Mexican state of Campeche to a work site in the Mexican state of Veracruz crashed,

---

[1] Restatement (Second) of Conflicts of Laws § 146 (1971) (for personal injury); *id.* § 175 (for wrongful death actions).

1

killing everyone on board. The helicopter was registered in Mexico and was owned by a Mexican company that provides transportation services within Mexico, and was thus regulated by Mexico's federal aviation authority. All of the victims, including the two pilots and seven passengers, were Mexican citizens.

Mexican federal aviation authorities determined that the cause of the crash was a defective inboard strap fitting. The helicopter was manufactured by Bell in 1979, and has been operated continuously in Mexico since that time. Bell also manufactured the strap fitting, which was installed in the helicopter in Mexico in 2009. The helicopter and the strap fitting were both designed and manufactured in Texas, where Bell is headquartered.

The only connection to this forum is that Bell is a Delaware corporation. Therefore, under the internal affairs doctrine, relations between Bell's stockholders and managers are governed by the DGCL and the Delaware common law of corporations.[2] But Bell has no operations in Delaware related to the helicopter crash and no conduct in Delaware affected the unfortunate victims of the crash, none of whom have any relevant connection with Delaware. Indeed, when estates for the victims were opened in Delaware to initiate this litigation, the plaintiffs filed petitions seeking to be excused from the need to appear in person because it would be an "unusual inconvenience" to do so.[3]

---

[2] *See, e.g.*, *Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*, 34 A.3d 1074, 1081-82 (Del. 2011) ("The term 'internal affairs' encompasses 'those matters that pertain to the relationships among or between the corporation and its officers, directors, and shareholders.' The doctrine requires that the law of the state . . . of incorporation must govern those relationships.") (internal citations omitted).

[3] *See, e.g.*, App. to Opening Br. at 373 (Petition and Order Under Chancery Court Rule No. 190).

Notwithstanding that Delaware has no relationship to the crash and that Delaware is much farther from Mexico than Texas, which the plaintiffs argue has the "most significant relationship" with this litigation, the plaintiffs filed products liability suits against Bell in the Delaware Superior Court in 2012.[4] The plaintiffs chose not to file in either their home nation of Mexico or Texas, the American state whose law they contend governs their claims.[5] The plaintiffs, all Mexican citizens, are representatives of seven of the victims (both pilots and five of the passengers).

Bell first moved to dismiss on *forum non conveniens* grounds, arguing that it was more appropriate to litigate claims stemming from a Mexican helicopter crash in a Mexican court. In a ruling that predated this Court's decision on the issue of *forum non conveniens* in *Martinez v. E.I. DuPont de Nemours & Co., Inc.*,[6] the Superior Court denied Bell's motion, holding that Mexico was not an available alternate forum.[7] The Superior Court's judgment was based in large part on its determination that a non-citizen cannot consent to jurisdiction in a Mexican court, and thus no case against Bell could

---

[4] The lawsuits were eventually consolidated. The plaintiffs also sued Bristow Helicopters, Inc. and Bristow U.S. LLC, who provide helicopter management and services, for failing to inspect and maintain the helicopter. Both companies were eventually voluntarily dismissed.

[5] The plaintiffs' non-Delaware attorney, who is a partner at a Texas-based law firm, acknowledged at oral argument that the plaintiffs chose not to file suit in Texas because they perceived Delaware as a "friendlier" forum, even though his clients desire Texas law to apply to their claims. Oral Argument at 37.18, *Bell Helicopter Textron, Inc. v. Arteaga*, No. 333, 2014 (Del. Feb. 18, 2015), *available at* http://courts.delaware.gov/supreme/oralarguments/ ("[W]hen you have the choice of more than one forum . . . you pick the best forum that you think will benefit your clients."). In other words, the plaintiffs want a ruling under Texas law but rendered by a judicial system with no relevant connection to the litigation, and that, unlike a Texas court, has no substantial experience or expertise in Texas law.

[6] 86 A.3d 1102 (Del. 2014).

[7] *Arteaga v. Bell Helicopter Textron, Inc.*, 2012 WL 5992810 (Del. Super. Nov. 30, 2012).

proceed in Mexico.[8]  At that point, Bell did not file an interlocutory appeal to this Court. But after finding cases from Mexico involving foreign defendants, Bell moved to reopen the judgment under Rule 60(b).[9]  The Superior Court denied the motion in a bench ruling.[10]  Bell then attempted to file an interlocutory appeal to this Court from that denial, which was refused.[11]  Bell never suggested moving the case to Texas, and the Supreme Court did not consider Texas as a potential alternative forum in its ruling.

Bell next filed a motion requesting that the Superior Court apply Mexican law to the plaintiffs' remedies.  On the same day, the plaintiffs filed a motion requesting the application of Texas law to liability and damages.  *Neither party contended that Delaware law should apply*, signaling the obvious: Delaware has no relevant connection to the litigation that would lead to its law governing the claims at issue.  The Superior Court heard oral argument on both motions.  Following this Court's ruling in *Martinez*, the Superior Court requested additional briefing from the parties on the effect of the decision on the choice of law motions.  The Superior Court did not revisit its previous decision not to dismiss the case on *forum non conveniens* grounds.

In *Martinez*, this Court affirmed the Superior Court's judgment dismissing the plaintiff's complaint on the basis of *forum non conveniens*.  The plaintiff was a citizen of Argentina who claimed that her husband had suffered from asbestos exposure while working in an Argentinean textile plant owned by a "great-great grand-subsidiary" of

---

[8] *See id*. at \*3 ("Mexican courts will almost certainly dismiss this suit because Defendants are domiciled in the United States of America.").

[9] Super. Ct. Civ. R. 60(b).

[10] App. to Answering Br. at 50 (Feb. 19, 2013, Hearing Transcript at 36).

[11] *Bell Helicopter Textron, Inc. v. Arteaga*, 2013 WL 1282456 (Del. Mar. 28, 2013).

4

DuPont, a Delaware corporation.[12]  The Court determined that DuPont had met its "high burden" to prove "overwhelming hardship" from having to litigate about Argentinean issues in a Delaware court.[13]  Although the issue before the Court was not which law should govern the litigation, the Court noted that one of the factors in its determination to dismiss the suit was that "the governing law is set forth in Spanish, not English;" in other words, there was no question that Argentinean law, not Delaware law, would apply to litigation involving injuries sustained by an Argentine working in Argentina.[14]

After considering the parties' briefing on *Martinez*, the Superior Court issued an order determining that Texas law should apply to the plaintiffs' claims.[15]  As the Superior Court noted, Delaware courts use a two-part test to determine which sovereign's law to apply when there is a conflict: first, the court determines whether there is an actual conflict of law between the proposed jurisdictions. If there is a conflict, the court determines which jurisdiction has the "most significant relationship to the occurrence and the parties" based on the factors (termed "contacts") listed in the Restatement (Second) of Conflict of Laws.[16]

In this case, the Superior Court first determined that Texas and Mexican law differ on the available remedies, damages, and liabilities, which was not disputed by the

---

[12] *Martinez v. E.I. DuPont de Nemours & Co., Inc.*, 86 A.3d 1102, 1103 (Del. 2014).
[13] *Id.* at 1106.
[14] *Id.*
[15] *Arte[a]ga v. Bell Helicopter Textron, Inc.*, 2014 WL 2600092 (Del. Super. June 10, 2014) [hereinafter Opinion].
[16] *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991).

parties.[17]    The court then reviewed the relevant factors contained in § 145 of the Restatement.   The four contacts, which "are to be evaluated according to their relative importance with respect to the particular issue," are:

> (1) the place where the injury occurred;
> (2) the place where the conduct causing the injury occurred;
> (3) the domicil, residence, nationality, place of incorporation and place of business of the parties; and
> (4) the place where the relationship, if any, between the parties is centered.[18]

The Restatement test is not mathematical; that is, it "does not authorize a court to simply add up the interests on both sides of the equation and automatically apply the law of the jurisdiction meeting the highest number of contacts."[19]   Rather, the facts specific to each issue are relevant in determining which factors are most important.[20]

The Restatement also provides that the "rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."[21]   The § 6 principles are:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,

---

[17] For example, Mexican law does not provide remedies for a decedent's estate, which Texas law does, although survivors have their own rights to receive material (economic) and moral (non-economic) damages.   Mexican law also computes economic damages from a plane crash differently depending on whether the victim was a passenger or a crewmember.   Texas law recognizes strict products liability and allows for punitive damages; Mexican law does not.

[18] Restatement (Second) of Conflicts of Laws § 145(2) (1971).

[19] *Travelers Indem. Co.*, 594 A.2d at 48 n.6.

[20] *Id.* (quoting Restatement (Second) of Conflicts of Laws § 145 (1971)) ("Section 145 has a qualitative aspect.   It clearly states that the 'contacts are to be evaluated according to their relative importance with respect to the particular issue.'").

[21] Restatement (Second) of Conflicts of Laws § 145(1) (1971).

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.[22]

After considering these factors based on the circumstances of this case, the Superior Court distinguished *Martinez* as "affirmed based on *forum non conveniens* grounds," not on choice of law grounds.[23] The court also found that whereas in *Martinez*, "all injury-producing conduct occurred in Argentina," in this case, "the injury-producing conduct occurred in Texas"[24] because the defective strap fitting was manufactured there. Indeed, the court found that particular factor of the Restatement test dispositive in determining which law to apply to liability and damages, dismissing Bell's argument that the law of the place of the injury should govern.[25] The court separately considered which law to apply to remedies, and again determined that Texas law was more appropriate.

Bell filed an application for certification of an interlocutory appeal on the choice of law issue, which this Court accepted.

---

[22] *Id.* § 6(b). One study found that the methodology employed by courts in making choice of law determinations ultimately "plays a less significant role in the courts' choice of the governing law than do other factors, such as the number and pertinence of factual contacts with a given state. For example, regardless of methodology, in 79% of the cases in which the product's acquisition and the victim's domicile and injury were in the same state, the courts applied that state's law, regardless of whether it favored the plaintiff or the defendant and regardless of whether that state was also the forum." Symeon C. Symeonides, *Choice of Law for Products Liability: The 1990s and Beyond*, 78 TUL. L. REV. 1247, 1248 (2004).
[23] Opinion at *6.
[24] *Id.*
[25] *Id.* at *4.

## III.    ANALYSIS

On appeal, Bell argues that the Superior Court erred in holding that Texas has the most significant relationship to damages, remedies, and liabilities.  We agree.

### A.    Comity Requires Deference to the Laws of the Sovereign State With the Strongest Interest in the Case Under the Restatement Test

When plaintiffs choose not to sue in the place where they were injured or where they live, or even in the jurisdiction whose law they contend applies, but instead in a jurisdiction with no connection to the litigation, our trial courts should be extremely cautious not to intrude on the legitimate interests of other sovereign states.  Each sovereign is entitled to conduct its own cost-benefit analysis to determine the appropriate balance between compensating victims and fostering commercial activity within its borders.  Especially when, as here, our law is not at stake, comity requires us to respect the balance established by those states.

Delaware has no public policy interest in this case, except to avoid contributing to forum-shopping and enmeshing itself in unrelated litigation.  Delaware litigants expect our courts to apply principled sets of rules to the cases before us.  Choice of law rulings should thus not depend on the judge's perception of the remedies available to plaintiffs in particular jurisdictions, such that plaintiffs can always recover the highest amount.[26]

---

[26] As Bell argues, the approach our courts have taken to these issues has been erratic.  Even worse, Bell's argument that the inconsistencies can be explained based on whichever law is most favorable to the plaintiff's recovery is not without plausibility.  *Compare Lee v. Choice Hotels Int'l Inc.*, 2006 WL 1148737 (Del. Super. Mar. 21, 2006) (granting the defendant's request to apply Indonesian law because the injury occurred in Indonesia, the plaintiffs were residents of South Korea, and the defendant was incorporated in Delaware, and "[t]here is a rebuttable presumption in favor of applying Indonesian law since the accident occurred there and that presumption should not be disturbed where place of incorporation is the only factor favoring the

8

Likewise, a pro-defendant bias should not play into the calculus. As the Texas Supreme Court once observed, "we cannot circumvent settled choice of law standards by using the public policy doctrine as an excuse to reach a more equitable remedy."[27] Rather, the Restatement principles this Court has identified as relevant must be applied consistently in all like cases. Put simply, the appropriate analysis is the one set forth in the Restatement: our courts must determine which jurisdiction has the "most significant relationship" to the litigation. In this case, that jurisdiction is Mexico.

## B.    The Liability, Damages, and Remedies at Issue in this Case Should Be Determined Under Mexican Law

We review the trial court's decision on the choice of law to apply to tort claims, including the issues of liability, damages, and remedies,[28] *de novo*.[29]

---

forum"), *and Rasmussen v. Uniroyal Goodrich Tire Co.*, 1995 WL 945556 (Del. Super. Aug. 18, 1995) (applying Missouri law where the allegedly defective product was manufactured in Oklahoma, the defendant was incorporated in Delaware and had its principle place of business in Ohio, the plaintiff was a resident of Delaware, and the injury occurred in Illinois, because the product had been purchased in Missouri by a Missouri resident) *with Cervantes v. Bridgestone/Firestone N., Tire Co., LLC*, 2010 WL 431788 (Del. Super. Feb. 8, 2010) (denying the defendants' request to apply Mexican law, even though the plaintiffs were Mexican citizens and the injury occurred in Mexico, because the defendants were incorporated in the United States and the allegedly defective product was designed and manufactured here).

[27] *Larchmont Farms, Inc. v. Parra*, 941 S.W.2d 93, 95 (Tex. 1997).

[28] Although the Superior Court considered which law to apply to the issues of liability and damages separately from the plaintiffs' remedies as the Restatement requires, we note that it generally makes no logical sense to apply different laws to these elements in the same case. To do so risks subjecting litigants to a law of the case that is not the law of any jurisdiction, but is instead an eclectic blend of various sovereigns' laws crafted by a judge into a bespoke tort law fitted for a particular case. As a practical matter, the factors underlying the respective choice of law determinations are identical. More importantly, liabilities and remedies are part of one unified body of tort law. "To some extent, at least, every tort rule is designed both to deter other wrongdoers and to compensate the injured person." Restatement (Second) of Conflicts of Laws § 145 cmt. c. (1971). Only extraordinary circumstances should justify unraveling the connections between the duties defendants owe and the remedies afforded to plaintiffs in the event of a tort. *See, e.g.*, *Simon v. U.S.*, 805 N.E.2d 798, 802-03 (Ind. 2004) ("[L]egislatures 'may enact a given law only because of its expected interaction with a complementary law.' . . .

*1. The Place Where the Injury Occurred Was Not Fortuitous*

Under the Restatement test, the first contact is often "determinative"[30]: § 146 provides that there is a rebuttable presumption that the law of the place where the injury occurred should govern related personal injury litigation; § 175 establishes the same presumption for wrongful death suits.[31] As the Superior Court discussed, those presumptions are less central when "the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue."[32] "The place of injury is considered 'fortuitous' when there is no other significant contact with the site other than the injury itself."[33] In this case, the Superior Court determined that the location of the helicopter accident was "fortuitous," and thus gave little weight to the fact that the crash occurred in Mexico.[34]

Consequently, applying the law outside the context of the other laws in the jurisdiction may contravene legislative intent. . . . As Brainerd Currie said, a party "should not be allowed to put 'together half a donkey and half a camel, and then ride to victory on the synthetic hybrid.'"") (internal citations omitted).

[29] *SIGA Tech., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 341 (Del. 2013).

[30] *Pallano v. AES Corp.*, 2011 WL 2803365, at *8 (Del. Super. July 15, 2011)) (citing *Cervantes v. Bridgestone/Firestone N. Am. Tire Co.*, 2010 WL 431788, at *2 (Del. Super. Feb. 8, 2010)); *see also Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009) ("For personal injury actions, the law of the state where the injury occurred is presumed to control unless another state has a more significant relationship.").

[31] Restatement (Second) of Conflicts of Laws § 146 (1971) ("In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."); *id.* § 175 (establishing the same presumption for wrongful death actions).

[32] Restatement (Second) of Conflicts of Laws § 145 cmt. e. (1971).

[33] *Pallano v. AES Corp.*, 2011 WL 2803365, at *8 (Del. Super. July 15, 2011) (citing *Cervantes*, 2010 WL 431788, at *2).

[34] Opinion at *4.

10

The Superior Court erred in making this determination. In *Ison v. E.I. DuPont de Nemours and Co., Inc.*, this Court observed that "[a]irplane accidents are an example of fortuitous injuries because the victim often has no connection to the place of the crash. In this case, the plaintiffs cannot claim that the alleged injuries occurred fortuitously in their home countries."[35] Although *Ison* specifically mentioned airplane accidents as an example of fortuitous accidents, the Court clarified that they were only "fortuitous" because the victims have no other connection to the place of the crash.[36] *Ison* noted that plaintiffs cannot invoke the fortuity concept when they were injured "in their own home countries."[37] That is also the case here: all of the victims were Mexican citizens, who were traveling from one Mexican state to another for their jobs in Mexico. In other words, the Mexican victims boarded a helicopter in Mexico that had been operating in Mexico since 1979 to take a journey that was supposed to end (and did end, albeit tragically) in Mexico. There was nothing fortuitous about this: they did not "fortuitously" happen to be in Mexico—they lived and worked there.[38] The Superior Court focused on the fact that the helicopter crashed in the Mexican state of Veracruz, which was "fortuitous" because most of the victims otherwise had no connections to that

---

[35] 729 A.2d 832, 844 (Del. 1999).

[36] For example, if a flight bound for London departed from New York on a U.S.-based carrier, but crashed in Greenland, the site of the accident could be considered "fortuitous."

[37] *Accord Feltham v. Bell Helicopter Textron, Inc.*, 41 S.W.3d 384, 390 (Tex. App. 2001) ("The case at bar does not involve a flight destined to leave Canada. Consequently, the place of injury was not fortuitous.").

[38] *Cf. Land v. Yamaha Motor Corp.*, 272 F.3d 514, 517 (7th Cir. 2001) ("Charles Land was injured while operating the WaveRunner in Indiana. He was a resident of Indiana, the owner of the boat was a resident of Indiana, and the boat had been garaged and serviced in Indiana for a decade before it caused Land's injury. There is no evidence in the record that the WaveRunner was ever used outside of Indiana. It was not mere fortuity that the injury occurred in Indiana.").

11

state. But as the Superior Court then correctly noted, "[a]viation activities in Mexican airspace are a matter of Mexican *federal* jurisdiction."[39] Thus, it is irrelevant that the Mexican state in which the helicopter crashed was "fortuitous"—the helicopter's location in the victim's home country of Mexico was not. As a result, the Superior Court gave too little weight to the fact that the accident took place in Mexico.[40]

*2.     The Other Three Restatement Contacts Do Not Establish that a Jurisdiction Other than Mexico Has a More Significant Relationship to the Occurrence and the Parties*

The Superior Court's error in discounting the importance of the place of the accident undermined the rest of its analysis. The other three Restatement contacts, considered in light of the principles in § 6, do not warrant rebutting the presumption that the law of the place of the accident—*i.e.*, Mexico—should govern this litigation.

The Superior Court focused primarily on the second contact, the place where the conduct causing the accident occurred, which it determined was Texas because the inboard strap fitting was designed, manufactured, and tested there.[41] The Superior Court cited its previous decision in *Ortega v. Yokohama Corp. of North America*, where it found that "Virginia had the most significant relationship to the occurrence where the tire at issue was designed and manufactured in Virginia."[42] But focusing on the site of manufacturing in determining the choice of law to apply has an obvious downside: it

---

[39] Opinion at *4 (emphasis added).

[40] The plaintiffs also argued that the location of the defective product was "fortuitous" because Bell did not know when it manufactured the part that it would end up in Mexico. But as this Court observed in *Ison*, "Most cases that discuss a fortuitous place of injury limit their discussion to whether the *location of the victim (not the product)* was fortuitous." 729 A.2d 832, 844 (Del. 1999) (emphasis added).

[41] Opinion at *4.

[42] 2010 WL 1534044, at *3 (Del. Super. Mar. 31, 2010).

encourages jurisdictions to change their laws to restrict remedies to victims so as to attract manufacturers.[43] That is, there might be a perverse incentive for jurisdictions to restrict tort remedies if those jurisdictions can benefit from the jobs and tax revenues that come with hosting manufacturing by helping the manufacturers to externalize the costs of injuries caused by their products to victims around the globe. Thus, the trend has been instead to look to the place where the injury-causing product was used, as the Superior Court itself has noted previously: "Modern choice of law considerations suggest that the jurisdiction where the product is marketed has a greater interest than a jurisdiction where a product is manufactured, developed, or tested."[44] Here, the helicopter that crashed is

---

[43] Accordingly, the Restatement notes that "[t]he place where the defendant's conduct occurred is of less significance in situations where . . . a potential defendant might choose to conduct his activities in a state whose tort rules are favorable to him." Restatement (Second) of Conflicts of Laws § 6 cmt. e. (1971). We are not the first to observe that focusing the choice of law analysis on the site of manufacturing could provide incentives for states to enact manufacturing-friendly tort laws that externalize the costs of preventable injuries from those manufacturers to victims and society more generally. *See, e.g.*, *Phillips v. Gen. Motors Corp.*, 995 P.2d 1002, 1011-12 (Mont. 2000) ("[S]tressing the importance of the place of manufacture for choice of law purposes in a product liability case would be unfair. . . . Applying the law of the place of manufacture . . . simply because the product was manufactured out-of-state would allow a state with a high concentration of industry to capture all of the benefits of a high threshold of liability and a low level of compensation. *Specifically, the manufacturing state could enjoy the benefits associated with liability laws which favored manufacturers in order to attract and retain manufacturing firms and encourage business within its borders while placing the costs of its legislative decision, in the form of less tort compensation, on the shoulders of nonresidents injured by its manufacturers' products*. This seems inherently unfair.") (internal citations omitted) (emphasis added); *see also* Erin A. O'Hara & Larry E. Ribstein, *From Politics to Efficiency in Choice of Law*, 67 U. CHI. L. REV. 1151, 1213 (2000) ("Manufacturers might prefer a place-of-manufacture or manufacturer's domicile rule to the place-of-sale rule. Rules geared to the manufacturer's location secure a single tort standard for all of a manufacturer's sales and *give states an incentive to compete for tax revenues by offering products laws that are favorable to manufacturers*.") (emphasis added); Bruce L. Hay, *Conflicts of Law and State Competition in the Product Liability System*, 80 GEO. L.J. 617, 652 (1992) (noting that a "state could hope to increase sales (and sales taxes) in its jurisdiction by making its laws more pro-defendant").
[44] *Thompson v. Reinco, Inc.*, 2004 WL 1426971, at *1 (Del. Super. June 15, 2004) (quoting *Rasmussen v. Uniroyal Goodrich Tire Co.*, 1995 WL 945556, at *2 (Del. Super. Aug. 18, 1995)).

not marketed or sold in the U.S. at all.[45]  Bell never intended for the strap fitting to be used in Texas, and in fact the only place it was ever used was in Mexico, where it was installed in a helicopter owned by a Mexican company.  As a result, the Superior Court's emphasis on the second contact was misplaced.

By contrast, the Superior Court did not give weight to the third contact, "the domicil, residence, nationality, place of incorporation and place of business of the parties," in its determination.  It stated, without commentary, that "[t]he decedents were all Mexican citizens," and that "Bell is a Delaware corporation with its principal place of business in Texas."[46]  The parties to this suit, the representatives of those decedents, are also all Mexican citizens.  Under the Restatement[47] and other recent Superior Court precedent, the parties' citizenship usually warrants more consideration.  In *Laugelle v.*

---

*See also* 63B Am. Jur. 2d *Products Liability* § 1397 (2015) ("It has been held that the place of manufacture of an allegedly defective product is a relatively unimportant factor in determining choice of law under the most-significant-relationship test in a products liability case."); *In re W.R. Grace & Co.*, 418 B.R. 511, 519 (D. Del. 2009) (holding under Delaware's choice of law rules that the conduct causing the injury took place where the product was installed, not where the product was manufactured); *Jaurequi v. John Deere Co.*, 986 F.2d 170, 175-76 (7th Cir. 1993) ("We can conceive of no legally cognizable reason why [the state of sale] legislature should be concerned with the application of its statute to extinguish a foreign resident's claim against a foreign corporation for injuries sustained on foreign soil.  Of course, [the state of sale] has an interest in preventing stale claims and promoting certainty of and finality to liability for products within the state's stream of commerce. . . .  This interest does not extend into perpetuity in a highly mobile society where a product may find its way into all fifty states through the resale market.") (internal citations omitted).

[45] App. to Opening Br. at 867 (Feb. 10, 2014, Hearing Transcript at 21).  Although there is no indication Bell was aware of the specific final destination of the strap fitting after it was manufactured, other than that it was somewhere outside the U.S., Bell was aware of the final destination of the helicopter itself.  *See* App. to Opening Br. at 789 (Export Certificate of Airworthiness, dated June 14, 1979).

[46] Opinion at *4.

[47] Restatement (Second) of Conflicts of Laws § 6 cmt. e. (1971) ("The state where these contacts are grouped [*i.e.*, where the parties are located] is particularly likely to be the state of the applicable law if either the defendant's conduct or the plaintiff's injury occurred there.").

*Bell Helicopter Textron, Inc.*—another case involving a Bell helicopter crash that was still pending in the same courthouse when the Superior Court issued its decision in this case—the Superior Court considered the location of the parties to be critical:

> Massachusetts, where the Pilot's loved ones experienced and still experience the economic difficulties, the pain, and the suffering his loss has visited upon them, and for which they seek some measure of recovery, holds the contacts far superior in this regard. It is there that the Laugelle Family lives with the consequences of the Pilot's demise.[48]

Here, there is no dispute that the decedents' representatives live with the consequences of the decedents' deaths in Mexico. Bell's location is less pertinent to the issue of remedies and damages: it is headquartered in Texas, but does business around the world, and the safety of its products affect people in numerous nations.[49]

As to the fourth contact, "the place where the relationship, if any, between the parties is centered," the Superior Court determined that "to the extent the relationship between the parties in this case can be said to have been centered anywhere, it is centered in Texas" because "Texas is where the inboard strap fitting was designed, manufactured, and tested."[50] But there is no indication that any of the decedents' relatives had any relationship with Bell before the helicopter crashed; the only relationship between the parties is the crash itself. In a previous case involving a car crash with parties from different states, this Court found that the only "relationship" was the collision, and thus

---

[48] 2013 WL 5460164, at *4 (Del. Super. Oct. 1, 2013).
[49] *See* Bell Helicopter – The Company, http://www.bellhelicopter.com/Company/Company.html (last visited Feb. 6, 2015).
[50] Opinion at *4.

15

the relationship was "centered" where the collision took place.[51] Here, if the relationship is centered on the victims' involvement in the crash of a Bell-manufactured helicopter, the fourth contact points to Mexico, where the helicopter had been used since 1979, where the fitting was installed, and where the victims took off for their ill-fated journey.[52]

   3.   *The Restatement § 6 Principles Also Favor the Application of Mexican Law*

Under the Restatement, the four contacts are considered based on the seven principles put forth in § 6. Here, those principles also favor applying Mexican law.

The first § 6 principle is "the needs of the interstate and international systems." The Superior Court quoted the comment to the Restatement in its analysis: "Choice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them."[53] The Superior Court then determined that applying Texas law, rather than Mexican law, would further this goal. But, as Bell argues, allowing the Superior Court's ruling to stand could disserve principles of international comity by impugning Mexico's judicial system as inadequate to compensate its own citizens. The Mexican people, acting through their elected representatives, are entitled to determine for themselves the appropriate balance between

---

[51] *Turner v. Lipschultz*, 619 A.2d 912, 915 (Del. 1992) ("Finally, the only relationship (the collision) among all of the parties . . . is centered in Delaware."); *see also Lee v. Choice Hotels Int'l Inc.*, 2006 WL 1148737 (Del. Super. Mar. 21, 2006) (holding that the relationship of the parties was centered in Indonesia, where the accident occurred).

[52] *See* 63B Am. Jur. 2d *Products Liability* § 1399 (2015) ("The place where the relationship is centered, which in a products liability action is *often the place where the product is primarily used*, may be a predominant factor for purposes of determining which jurisdiction has the most significant relationship to the parties and the occurrence. . . . Similarly, a strict liability action against the manufacturer of an allegedly defective product that causes injury to an employee in the course of employment is often governed by the *law of the place where the employment relation is centered*, rather than the place of manufacture of the product.") (emphasis added).

[53] Opinion at *5 (quoting Restatement (Second) of Conflicts of Laws § 6 cmt. d. (1971)).

16

the remedies available to victims and limiting liability to encourage companies to operate in Mexico.[54]  Providing incentives for Mexican citizens to evade the limits on remedies and damages imposed by their own legal system when the defendant fortuitously happens to be a U.S.-based company threatens to disturb international relations and to impede the willingness of companies to do business in Mexico.[55]  The first § 6 principle, considered by the Restatement to be the most important,[56] thus strongly favors the application of Mexican law to the remedies and damages available to the Plaintiffs.

The second, third, and fifth principles balance the "relevant policies of the forum" with the "relevant policies of other interested states" and the "basic policies underlying" tort law.  Here, Delaware's only connection to the litigation, other than being the place of the trial, is an entirely unrelated one: Bell is incorporated here.  No party has suggested that Delaware law should apply to this tort suit.  According to the Restatement, when "the state of the forum has no interest in the case apart from the fact that it is the place of the

---

[54] Indeed, that principle may be particularly relevant in this context, because Mexican law relies on a civil code rather than judge-made common law.  Thus, whereas remedies and damages in the U.S. might be determined according to (potentially unelected) judges, in Mexico, they are solely determined by the (elected) legislators.

[55] *See, e.g.*, *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) (holding that "principles of prescriptive comity" require limiting relief under American statutes to American injury, not foreign injury, and observing that "several foreign nations have filed briefs here arguing that to apply our remedies would unjustifiably permit their citizens to bypass their own less generous remedial schemes, thereby upsetting a balance of competing considerations that their own domestic antitrust laws embody"); *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 304 (1918) ("To permit the validity of the acts of one sovereign state to be reexamined and perhaps condemned by the courts of another would very certainly 'imperil the amicable relations between governments and vex the peace of nations.'").

[56] Restatement (Second) of Conflicts of Laws § 6 cmt. d. (1971) ("Probably the most important function of choice-of-law rules is to make the interstate and international systems work well.").

trial . . . the only relevant policies of the state of the forum will be embodied in its rules relating to trial administration."[57]

In contrast, the policies of Mexico may be undermined if Texas law is applied. Mexican law confers recognition on non-married partners, or "concubinas," but Texas law does not.[58] In this case, three of the victims' representatives are concubinas, and thus may not be able to recover survivor benefits under Texas law or have standing to bring a wrongful death action in Texas.[59] The Superior Court sidestepped the issue: "Applying Texas law to Plaintiffs' remedies is not a steadfast contradiction of the Mexican policy that makes remedies available to concubines. The Court declines to decide at this time if [plaintiffs] Montes and Salas will recover under Texas law as concubines."[60]

Moreover, the Mexican people, acting through their legislature, have chosen to regulate their airspace under a national regime.[61] It would be disrespectful to ignore the policy choices Mexico has made in establishing that regime for the courts of Delaware to accord them no weight.[62] The Superior Court "inferred" that Mexico's policies are

---

[57] *Id*. § 6 cmt. e.

[58] *See Nevarez v. Bailon*, 287 S.W.2d 521, 523 (Tex. Civ. App. 1956).

[59] Under Texas law, wrongful death actions are "for the exclusive benefit of the surviving spouse, children, and parents of the deceased." Tex. Civ. Prac. & Rem. Code Ann. § 71.004(a).

[60] Opinion at *7. Plaintiff Gonzalez was also eventually identified as a concubina.

[61] *See, e.g.*, *Cliffs-Neddrill Turnkey Int'l-Oranjestad v. M/T Rich Duke*, 734 F. Supp. 142, 149 (D. Del. 1990) ("[T]he country where the collision takes place has a strong interest in regulating conduct within its borders.").

[62] *Cf. Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 675 (5th Cir. 2003) ("We are mindful of the disparate levels of wrongful death damages provided under Texas and Mexican law and the incentive for plaintiffs to sue in the United States. Given that all decedents and plaintiffs are Mexican, however, there is little justification for applying Texas law, which seeks to 'protect[ ] the rights of its citizens to adequate compensation.' Were we to apply Texas law as a means of righting any perceived inequities of Mexican law, we would be undercutting Mexico's right to create a hospitable climate for investment.").

intended to "shield resident defendants from the potentially large financial burden associated with these causes of action," and thus "Mexico does not have a strong policy interest in the application of Mexican law here due to Bell's status as a non-resident defendant."[63] Even if the Superior Court's understanding of Mexican law was correct—which Bell disputes[64]—it does not mean that Mexico's policy interest is subordinate to Texas'. Mexico is a sovereign nation with a distinct interest in regulating its own airspace, and the aircraft it permits to fly there.[65] By contrast, Texas would seem to have little interest in the remedies available to Mexican citizens representing victims injured in a helicopter that crashed in Mexico.[66]

The fourth § 6 principle is "the protection of justified expectations." The plaintiffs could not have reasonably expected that Texas law would apply to their legal claims. Rather, as Mexican citizens whose loved ones boarded a helicopter for a flight that was to start and end in Mexico, they should have expected to have their rights governed by

---

[63] Opinion at *5.

[64] *See* Reply Br. at 11-13 ("The Mexican policy interest, then, is to protect injured parties and not to protect persons alleged to have injured them.").

[65] *Cf. Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 381-82 (5th Cir. 2002) ("Mexico, as a sovereign nation, has made a deliberate choice in providing a specific remedy for this tort cause of action. In making this policy choice, the Mexican government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. In resolving this trade-off, the Mexican people, through their duly-elected lawmakers, have decided to limit tort damages with respect to a child's death. It would be inappropriate—even patronizing—for us to denounce this legitimate policy choice by holding that Mexico provides an inadequate forum for Mexican tort victims.").

[66] *Cf. In re Pirelli Tire, LLC*, 247 S.W.3d 670, 679 (Tex. 2007) (dismissing a suit brought by Mexican citizens on behalf of their relative, also a Mexican citizen, who was killed in a car crash that took place in Mexico, on *forum non conveniens* ground in part because "[t]he public interests involved here strongly favor Mexico. Mexico's interest in protecting its citizens and seeing that they are compensated for their injuries is paramount. The safety of Mexican highways and products within the country's borders are also Mexican interests").

19

relevant Mexican law. On the other hand, Bell is a U.S.-based company, and it chose to maintain its headquarters and manufacturing facilities in Texas. It cannot protest that it could not expect that Texas law might conceivably apply to a products liability suit brought against it. But Bell was also aware that its helicopter was operated in Mexico, so it could have reasonably expected that any litigation involving that helicopter would be subject to Mexican law. Because the comment to the Restatement explains that this principle is less relevant in the field of tort law,[67] and it does not on balance point toward applying Texas law, much less unambiguously, considering this factor does not override the other factors supporting the application of Mexican law.

The sixth principle is "certainty, predictability and uniformity of result." The Restatement provides that "[t]hese are important values in all areas of the law. To the extent that they are attained in choice of law, forum shopping will be discouraged."[68] This factor also favors applying Mexican law, rather than Texas law. Enabling foreign citizens to opt out of the remedial schemes created by their own laws only encourages forum shopping—or even defendant-shopping.[69]

The final principle is "ease in the determination and application of the law to be applied." Although it will undoubtedly place some strain on the Superior Court to have to retain translators and hear from experts in Mexican law, that factor properly applies with greater force to a motion to dismiss on *forum non conveniens* grounds, and not in

---

[67] Restatement (Second) of Conflicts of Laws § 6 cmt. b. (1971).

[68] *Id*. § 6 cmt. i.

[69] *Cf. Martinez v. E.I. DuPont de Nemours & Co., Inc.*, 82 A.3d 1 (Del. Super. 2012) (holding that the proper defendant was the victim's employer, an Argentinean company, not its "great, great, grand" parent, a Delaware corporation), *aff'd on other grounds*, 86 A.3d 1102 (Del. 2014).

20

connection with the choice-of-law analysis, especially where, as here, the hardship is largely of the plaintiffs' own making. It is unfair to trap litigants in the bind of applying Texas law primarily because of the difficulties of translating legal materials from Spanish to English, when the Spanish-speaking plaintiffs are the ones who first argued to have this case heard in the courts of Delaware, which has no relevant connection with the suit, instead of Mexico, where they live, or even Texas, which would at least be geographically closer and has a higher likelihood of employing Spanish-speaking court personnel.[70] A court must not let its own lack of facility in a foreign language or foreign law tilt the choice of law calculus. To do so is unfair to the parties and a signal that the case should perhaps instead be heard in a forum with relevance to the case, rather than Delaware.

## IV. CONCLUSION

For these reasons, based on the Restatement contacts, underlying principles, and undisputed facts, Mexico has the most significant relationship to the liability, remedies, and damages at issue. We therefore reverse the Superior Court's order determining that Texas law should apply to the resolution of the plaintiffs' claims.

---

[70] Approximately 6% of Delawareans speak Spanish, compared to nearly 1/3 of Texans. *See* 2013 American Community Survey 1-Year Estimates, Language Spoken At Home, *available at* http://www.census.gov/acs/www/ (last visited Feb. 25, 2014).

21

**VAUGHN**, Justice, dissenting:

Under the Restatement (Second) of Conflict of Laws §§ 145, 146, and 175, the law of Mexico, as the situs of the Appellees' injury, is presumed to apply to the parties' rights and liabilities unless Texas has a more significant relationship to the occurrence and the parties under the principles set forth in § 6 of the Restatement.[71] Because I believe the Appellees have successfully rebutted the presumption that Mexican law applies to the substantive issues of this case, I respectfully dissent.

The contacts to be taken into account in applying the principles of § 6 include the four contacts set forth in § 145(2): (1) where the injury occurred, (2) where the conduct causing the injury occurred, (3) the parties' domicil, residence, nationality, place of incorporation and place of business, and (4) where the parties' relationship is centered.[72] The contacts and factors are not to be applied by simply counting up the interests on each side, but rather "evaluated according to their relative importance with respect to the particular issue."[73]

In the case at bar, the § 145(2) factors largely off-set each other as to their relative importance. The first and third factors take due notice that the injury occurred in Mexico, the Appellees reside in Mexico, the Appellant is incorporated in Delaware, and the Appellant's principal place of business is in Texas. As to the

---

[71] *See Tumlinson v. Advanced Micro Devices, Inc.*, 106 A.3d, 983, 987 (Del. 2013).

[72] *Id.* at 987 (citing Restatement (Second) of Conflict of Laws § 6 (1971)).

[73] *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991) (quoting Restatement (Second) of Conflict of Laws § 145 (1971)).

second factor, the design, manufacture, and testing of the allegedly defective part that caused the helicopter crash occurred in Texas.  The Appellant argues that the Appellees' additional claims of design defect and failure to warn lessen the relative importance of Texas as the place where the conduct causing the injury occurred. While this may be true, the second factor still seems to point primarily toward applying Texas law.  The fourth factor asks where the relationship of the parties is centered.  Comment (e) to § 145(2) indicates that this factor is considered when there is a relationship between the parties and the injury is caused by an act performed in the course of the relationship.[74]  Here, the fourth factor is not applicable.

§ 6 gives seven factors to be considered in determining what law governs the substantive issues of a case.[75]  The list is not intended to be exclusive, and "varying weight will be given to a particular factor, or to a group of factors, in different areas of choice of law."[76]

---

[74] Restatement (Second) of Conflict of Laws § 145(2), cmt. e (1971).
[75] As noted in the Majority opinion, the § 6 principles are:
  (a) the needs of the interstate and international systems,
  (b) the relevant policies of the forum,
  (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
  (d) the protection of justified expectations,
  (e) the basic policies underlying the particular field of law,
  (f) certainty, predictability and uniformity of result, and
  (g) ease in the determination and application of the law to be applied.
*Id.* § 6(2).
[76] *Id.* § 6, cmt. c.

The first factor examines "the needs of the interstate and international system."[77]  "Choice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them."[78]  I also recognize that in this case the Appellant contends that international comity is a factor that should lead to the application of Mexican law.  While I agree that international comity is a relevant factor in the choice of law analysis, I am not persuaded that it should lead to the application of Mexican law here.  There is no persuasive evidence in the record that relations between Mexico and Texas, or commercial intercourse between the two jurisdictions, will be affected by choice of law.

The second § 6 factor to be considered is "the relevant policies of the forum."[79]  Comment (e) of § 6 provides that where the forum state has no interest in the litigation apart from the fact that it is the place of trial, its only relevant policies will be those pertaining to trial administration.[80]  I believe that there can be cases in which Delaware appears to have no role in the case other than as being the place of trial, but where the law of another forum is so offensive to an important public policy of Delaware, Delaware's policy becomes a significant factor in the

---

[77] *Id.* § 6(2)(a).
[78] Restatement (Second) of Conflict of Laws § 145(2), cmt. d (1971).
[79] *Id.* § 6(2)(b).
[80] *Id.* § 6, cmt. e.

analysis. In this case, however, I accept the Restatement commentary that Delaware's interest is limited to trial administration.

The third § 6 factor to be considered is "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue."[81] The laws of Mexico and Texas differ in a number of ways. The distinction that seems to have received the most attention in this case is the manner in which damages are determined in each sovereign. Both parties agree that under Mexican law, damages are calculated under a statutory formula, which Appellant's counsel described as a "liquidated damages formula."[82] Both parties agree that one calculation applies to the passengers and another calculation, or formula, applies to the pilots of the helicopter. The Appellees in this case include the survivors of both categories. The Appellees contend that Mexico's statutory limit on damages bars a full and fair recovery. The Appellant does not deny that the measure of damages under Mexican law would be less than the measure of damages under Texas law, which seeks to award a full and fair recovery as determined by a jury.

The Superior Court inferred that Mexico's policy and interest in capping damages is to shield Mexican residents and companies that do business in Mexico

---

[81] *Id.* § 6(2)(c).

[82] Oral Argument at 46:33, *Bell Helicopter Textron, Inc. v. Arteaga*, No. 333, 2014 (Feb. 18, 2015) ("[Appellees' counsel] called [Mexico's statutory] damages a cap, and it is not a cap. It's a liquidated damages formula."), *available at* http://courts.delaware.gov/supreme/oralarguments/.

from the potentially large financial burden of a damages award.[83] The Appellant disputes this finding, and contends that Mexico seeks to protect injured parties rather than the persons alleged to have injured them. There is support in the record, however, for the conclusion that the purpose of the statutory limit is to protect Mexican defendants from liability for large and uncertain damage awards.[84] Other authorities also support the conclusion that the purpose of the Mexican cap on tort damages is to shield Mexican defendants from large and uncertain damage awards.[85]

For example, in *Ford Motor Company v. Aguiniga*, all but one of the occupants of a vehicle were killed in an automobile accident that occurred in Mexico.[86] Some of the vehicle's occupants were residents of Texas, while others

---

[83] *Arte[a]ga v. Bell Helicopter Textron, Inc.*, 2014 WL 2600092, at *6 (Del. Super. June 10, 2014) [hereinafter "Opinion"].

[84] *See, e.g.*, Appellant's Op. Br. App. at A117 (Lic. Adalberto Chávez Bustos Affidavit at 9) ("The purpose of the limits established under federal law . . . and the Federal District on negligent homicide damages, is to protect defendants in their respective [Mexican] States for liability for judgments which award large and uncertain sums of money . . . .").

[85] *See, e.g.*, *Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 260 (Tex. App. 1999) (concluding that because the defendants were not citizens, residents, or businesses of Mexico, the statutory cap was inapplicable); *Vizcarra v. Roldan*, 925 S.W.2d 89, 92 (Tex. App. 1996) (agreeing that because the defendants consisted of a Texas citizen and a Texas corporation, Mexico's public policy interest in capping damages to protect its businesses and citizens from excessive liability would not be offended by the application of Texas law); *Villaman v. Schee*, 1994 WL 6661, at *4 (9th Cir. Jan. 10, 1994) ("Mexico's limitation of tort damages . . . is designed to protect its residents from excessive financial burdens or exaggerated claims.") (internal quotation marks omitted); *Hurtado v. Superior Court*, 522 P.2d 666, 670 (Cal. 1974) ("The interest of [Mexico] in a tort rule limiting damages for wrongful death is to protect defendants from excessive financial burdens or exaggerated claims.").

[86] *Ford Motor Co.*, 9 S.W.3d at 256.

were residents of Mexico.[87]  In affirming the trial court's determination that Texas law applied, the Texas Court of Appeals stated:

> Our review of this case established that Mexico has no interest in this litigation.  Ford is a United States corporation, not a Mexican corporation.  Defendant Marta Valazquez was a Texas resident and United States citizen.  This fact establishes that neither defendant is a Mexican resident, citizen, nor business. Therefore, there is not a Mexican defendant who would be protected by the limitations in damages under Mexican law.[88]

It follows that where a Mexican plaintiff has the option of bringing suit in an American state or federal court against a defendant who is neither domiciled nor doing business in Mexico, Mexico has a significantly diminished interest in having its statutory cap on damages applied.  In other words, Mexico's relationship to the issue of damages is significantly reduced.  The Appellant's argument that Mexico has an interest in seeing that its law of damages is applied here seems quite unpersuasive when one considers that the result would be to limit the Mexican Appellees' measure of damages to a lesser amount than the one provided under Texas law.[89]

---

[87] *Id.*

[88] *Id.* at 260; *see also Baird v. Bell Helicopter Textron*, 491 F. Supp. 1129, 1140-41 (N.D. Tex. 1980) (stating that British Columbia's interest in protecting its citizens from excess liability is not implicated if defendant is a Texan).

[89] Other authorities have reached the same conclusion.  *See Hurtado*, 522 P.2d at 670 ("Since it is the plaintiffs and not the defendants who are the Mexican residents in this case, Mexico has no interest in applying its limitation of damages—Mexico has no defendant residents to protect and has no interest in denying full recovery to its residents injured by non Mexican defendants."); *Ford Motor Co. v. Aguiniga*, 9 S.W.3d at 259-61 (finding that Mexico has no interest in applying its statutory cap on damages to limit plaintiffs' recovery because none of the defendants were Mexican residents); *Enterprise Prods. Partners, L.P. v. Mitchell*, 340 S.W.3d 476, 482-83 (Tex.

Moreover, the Superior Court in the instant case found that Texas has a strong interest in the regulation of the conduct of manufacturers that have business operations in the state.[90] The Texas system of "tort liability for defective products 'serves as an incentive to encourage safer design and to induce corporations to control more carefully their manufacturing processes.'"[91] "Texas' interest 'is particularly strong when the defective product in question was manufactured and placed in the stream of commerce in the State of Texas.'"[92] Nothing has been brought to this Court's attention which appears to contradict these findings.

In *Tokio Marine & Fire Ins. Co., Ltd. v. Bell Helicopter of Textron, Inc.*, a helicopter manufactured by Bell at a plant in Texas crashed in Japan, killing a

---

App. 2011) (finding that Mississippi has no interest in applying its statutory cap on tort damages when the plaintiffs all reside in Mississippi and both defendants were Texas corporations with their principal place of business in Texas); *see also Bryant v. Silverman*, 703 P.2d 1190, 1194-95 (Ariz. 1985) (Arizona law applied to Arizona resident's tort action arising out of an airplane crash in Colorado partly because Colorado law did not allow for the full range of tort damages); *Baroldy v. Ortho Pharm. Corp.*, 760 P.2d 574, 580 (Ariz. App. 1988) (Arizona law applied to Arizona resident's products liability action partly because state in which the injury occurred did not recognize the cause of action).

[90] Opinion at *5. Other courts have recognized Texas' interest in regulating its corporations' conduct as a significant interest for the purposes of choice of law. *See McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 426 (5th Cir. 2001) ("Texas has a strong interest in enforcing its products liability laws against the manufacturers operating in the State."); *Ford Motor Co.*, 9 S.W.3d at 260 (stating that Texas has a strong policy in controlling corporate action in the manufacture of defective products); *Baird*, 491 F. Supp. at 1141 ("A related interest [of Texas] . . . is the evident desire to force those Texas companies that fail to put adequate care into the development and marketing of products to accept the responsibility for that lack of concern.").

[91] Opinion at *5 (quoting *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 250 (5th Cir. 1990)).

[92] *Id.* (quoting *Lone Star Ammunition, Inc.*, 913 F.2d at 250).

Japanese construction worker.[93]  Plaintiffs, Japanese insurance companies, filed suit against Bell alleging negligence, strict liability in tort, and breach of warranty.[94]  In determining whether to apply Japanese or Texas law to the plaintiffs' claims, the federal district court found significance in the following factors:  (1) the crash of the helicopter and the injury occurred in Japan, (2) the conduct causing the injury occurred in Texas, (3) the plaintiff insurance companies were located in Japan, (4) the defendant's principal place of business was Texas, and (5) the relationship of the parties was not centered in any particular country.[95]

In addressing the third § 6 factor, the district court found that "Texas has a strong interest in applying its law to manufacturers of goods in Texas, regardless of whether the persons suffering loss as a result of use of those goods are Texas residents."[96]  The court concluded that Texas had the most significant relationship to the occurrence and the parties, and thus Texas law should apply.[97]

The Majority asserts that Texas has little interest in the remedies available to Mexican citizens, but disregards Texas' significant interest in holding its companies fully liable for their negligent manufacturing.  The application of Texas law would force Bell to accept responsibility for its negligent conduct and induce

---

[93] *Tokio Marine & Fire Ins. Co., Ltd. v. Bell Helicopter of Textron, Inc.*, 1982 WL 623495, at *1, *10 (S.D. Tex. July 8, 1982).
[94] *Id.* at *1.
[95] *Id.* at *10.
[96] *Id.* at *12 (internal citation omitted).
[97] *Tokio*, 1982 WL 623495, at *12.

8

Bell to more carefully control its manufacturing processes. Moreover, because Bell's principal place of business is in Texas, there is little doubt that Texas has a significant interest in seeing that Bell manufactures the safest product possible, even when the injuries sought to be prevented occur outside the State.[98] "The economic results of a safe product and a good reputation are directly and indirectly beneficial to the state."[99]

The Majority also concludes that the policies of Mexico may be undermined if Texas law is applied, and that to apply Texas law would ignore Mexico's choice to regulate its airspace under a national regime. I disagree. This is a products liability case in which the focus of the claim is on the product as opposed to the helicopter crash itself. Mexico has limited interest in applying its law to regulate the conduct of a Texas manufacturer. Mexico's sole interest in this case is seeing its citizens fully and fairly compensated for their losses, an interest that is furthered through the application of Texas law.[100]

---

[98] *See Lone Star Ammunition, Inc.*, 913 F.2d at 250 (applying Texas law to a products liability action brought by non-residents against a Texas business for injuries occurring in North Carolina); *Baird*, 491 F. Supp. at 1140 (applying Texas law to a wrongful death action brought by a Canadian plaintiff against a Texas aircraft manufacturer).

[99] *Baird*, 491 F. Supp. at 1141.

[100] *See Tokio*, 1982 WL 623495, at *12 (concluding that Japan's interest in seeing its citizens compensated is furthered by the application of Texas law); *see also Guitierrez v. Collins*, 583 S.W.2d 312, 321 (Tex. 1979) ("[Mexico's cap on damages has] the effect of substantially reducing a plaintiff's recovery compared to that which he might expect to receive in a United States court.").

The fourth § 6 factor is "the protection of justified expectations."[101] This factor is especially important when a party has molded its conduct to conform to the requirements of a particular state.[102] In this case, it seems speculative to think that the Appellee had any expectations concerning litigation in the event of a crash. Moreover, Bell, a company with its principal place of business in Texas, should expect that Texas law will apply to claims arising out of the manufacture of faulty helicopter equipment in Texas. Thus, the Appellant cannot be surprised by the application of Texas law.

The fifth § 6 factor is "the basic policies underlying the particular field of law."[103] "This factor is of particular importance in situations where the policies of the interested states are largely the same, but where there are nevertheless minor differences between their relevant local law rules."[104] This factor does not appear to have any significance in this case.

The sixth § 6 factor is "certainty, predictability and uniformity of result."[105] The comment to this factor recognizes the importance of these values but also cautions that "it is often more important that good rules be developed than that predictability and uniformity of result should be assured."[106] The comment also

---

[101] Restatement (Second) of Conflict of Laws § 6(2)(d) (1971).
[102] *Id.* § 6 cmt. g.
[103] *Id.* §6(2)(e).
[104] *Id.* § 6 cmt. h.
[105] Restatement (Second) of Conflict of Laws § 6(2)(f).
[106] *Id.* § 6 cmt. i.

10

observes that "[p]redictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transaction."[107] In this case, application of Texas law would be consistent with several Texas cases that involved a defendant with a manufacturing plant in Texas and an aviation crash occurring in a foreign country.[108]

The final § 6 factor is "ease in the determination and application of the law to be applied."[109] Although this factor would seem to favor Texas, it is not significant here.

I agree with the Superior Court that an evaluation of the foregoing factors according to their relative importance leads to the conclusion that Texas has a more significant relationship to the occurrence and the parties than Mexico. Accordingly, I believe that Texas law should apply.

In reaching this conclusion, I recognize that there are cases that have resolved a choice of Texas or Mexican law in favor of Mexico. For example, in

---

[107] *Id.* § 6(2)(e).

[108] *See McLennan*, 245 F.3d at 426 (applying Texas law to a Canadian plaintiff's claim stemming from a helicopter crash that took place in Canada, which was filed against a defendant that did business in Texas); *Guizhi v. Bell Helicopter Textron*, *Inc.*, 1997 WL 786494, at *2 n.2 (N.D. Tex. Dec. 16, 1997) (concluding that Texas law applies despite the plaintiffs' injury occurring in China because two of the defendants had their principal place of business in Texas, and the faulty helicopter that caused the injury was manufactured in Texas); *Tokio Marine & Fire Ins. Co., Ltd.*, 1982 WL 623495, at *12 (applying Texas law to a claim brought by Japanese plaintiffs stemming from a Bell-manufactured helicopter crash taking place in Japan); *Melton v. Borg-Warner Corp.*, 467 F. Supp. 983, 986-87 (W.D. Tex. 1979) (determining that Texas law applied to a claim resulting from a helicopter crash taking place in Germany).

[109] Restatement (Second) of Conflict of Laws § 6(2)(f) (1971).

11

*Figueroa v. Williams*, a truck driver was paid to transport seventy-four illegal aliens—all citizens of Mexico or Honduras—to Houston, Texas in a trailer.[110] Instead, the driver abandoned the trailer at a gas station in Victoria, Texas.[111] As a result, nineteen of the aliens being transported died in the back of the trailer.[112] Family members of the decedents, also citizens of Mexico and Honduras, brought suit for wrongful death in Texas against the Delaware Limited Partnership that manufactured the trailer and the New York Corporation that owned the trailer.[113] In determining whether to apply the law of Mexico, Honduras, or Texas to the issue of damages, the Texas district court weighed the § 6 factors and concluded that Texas had no interest in the application of its damages law.[114]

Similarly, in *Hoffman-Dolunt v. Holiday Inn, Inc.*, the plaintiff sued defendants, Holiday Inns, Inc., and Posadas de Mexico, S.A. de C.V. for the wrongful death of her husband, who died at a hotel in Ixtapa, Mexico.[115] The decedent was a resident of Mexico at the time of his death, and all of the alleged wrongful conduct that caused his death took place in Mexico.[116] Defendant Holiday Inns was a Tennessee corporation that owned and operated hotels in the

---

[110] *Figueroa v. Williams*, 2010 WL 5387599, at *1 (S.D. Tex. Dec. 17, 2010).
[111] *Id.*
[112] *Id.*
[113] *Id.*
[114] *Figueroa*, 2010 WL 5387599, at *5-11.
[115] *Hoffman-Dolunt v. Holiday Inn, Inc.*, 1997 WL 33760924, at *1 (Tex. App. Feb. 27, 1997).
[116] *Id.* at *5.

12

United States and in other countries.[117]  Defendant Posadas was a Mexican corporation, with its principal place of business in Mexico.[118]  After considering all of this information, the Texas Court of Appeals determined that Mexico had the most significant relationship to the claim, and thus governed.[119]

Finally, in *Vizcarra v. Roldan*, the plaintiff, a Mexican citizen, filed a personal injury suit against the defendant, a Texas citizen, and the defendant's employer, a Texas corporation, after he was struck by the defendant's vehicle in Mexico.[120]  His wife and mother, also citizens of Mexico, filed bystander and loss of consortium claims in the same lawsuit.[121]  The trial court applied Texas law and awarded damages to the plaintiffs in varying amounts.[122]  On appeal, the Texas Court of Appeals found that the trial court erred by applying Texas law over Mexican law, and reversed.[123]

In determining that Mexican law applied to the plaintiffs' claims, the appellate court noted in *Vizcarra* that the plaintiffs were citizens of Mexico, the defendants were citizens of Texas, and that the relationship between the parties consisted solely of the accident, which took place in Mexico.[124]  The court then

---

[117] *Id.* at *2, *5.
[118] *Id.* at *5.
[119] *Hoffman-Dolunt*, 1997 WL 33760924, at *8.
[120] *Vizcarra*, 925 S.W.2d at 89-90.
[121] *Id.* at 90.
[122] *Id.*
[123] *Id.*
[124] *Vizcarra*, 925 S.W.2d at 91.

addressed the Section 6 factors and found that "while . . . Texas has a strong policy interest in controlling corporate action in areas such as the manufacture of defective products,"[125] that interest was not implicated for two reasons. First, because the accident was caused by the negligence of an employee, there was no corporate act on the part of the Texas company that caused the accident.[126] Second, the court found that Mexico had no reason to defer to Texas to regulate negligent conduct inside of its borders.[127]

Notably, the appellate court agreed with the plaintiffs' assertion that when defendants consist of a Texas citizen and a Texas corporation, Mexico's public policy interest of protecting Mexican businesses and citizens from excessive liability claims is not offended by application of Texas law.[128] The court, however, went on to find that because the Texas corporation in the case before it maintained a warehouse and did business in Mexico, Mexico's public policy was applicable.[129]

Each of these cases is distinguishable from the case at bar. In *Figueroa*, the only connection that the claim had to Texas was that the defendant abandoned the trailer in Texas, making it the place of the injury. Here, the Appellant has its principal place of business in Texas and the defective component that caused the helicopter crash was manufactured in Texas. In *Hoffman-Dolunt*, all of the

---

[125] *Id.*
[126] *Id.*
[127] *Id.* at 91-92.
[128] *Vizcarra*, 925 S.W.2d at 92.
[129] *Id.*

14

conduct that caused the injury took place in Mexico, and one of the defendants was a Mexican corporation. Here, the negligent manufacturing that led to the injury took place in Texas and the Appellant is a Delaware corporation with its principal place of business in Texas. Finally, unlike in *Vizcarra*, it was Bell's manufacture of a defective product that caused the injuries in the instant case, not the negligent conduct of one of its employees. Moreover, because the conduct of the pilots is not at issue in this case, Mexico's interest in controlling negligent conduct within its borders is not implicated. The flexibility of the "most significant relationship test" requires that each case be decided on its own facts.[130]

Lastly, I recognize the Majority's concern that three of the victims' representatives are concubinas, and thus may not be permitted to recover survivor benefits or bring a wrongful death action in Texas. This issue, which is disputed by the parties, is of little significance to our choice of law analysis. The Appellees expressly moved for the application of Texas law to the issues of liability and damages. It follows that they believe they can make a full and fair recovery under Texas law, and have accepted any risk that their claims may be barred. The one certainty, however, is that the Appellees' recovery will be limited if Mexican law applies to their claims.

---

[130] *Travelers Indem. Co.*, 594 A.2d at 48.

For all of the foregoing reasons, I would affirm the interlocutory order of the Superior Court.